DEREK THRONEBURG,         )
                               )
         Plaintiff,      )
                               )
    v.                 )      Case No. 4:19 CV 1720 RWS
                               )
CHARTER COMMUNICATIONS,   )
INC., et al.,                )
                               )
        Defendants.    )

## MEMORANDUM AND ORDER

Plaintiff Throneburg was a Charter subscriber from March 2003 through April 2012. He alleges that Charter failed to disclose that it would sell subscribers' personally identifiable information ("PII") and that Charter actually sold his PII "hundreds of times per month," both while he was a subscriber and after he terminated his service relationship with Charter. (Doc. #4 at ¶¶ 14, 17, 24). Throneburg argues that Charter's actions violate the Cable Communications Act of 1984 ("Cable Act"), 47 U.S.C. § 551 *et seq.* He also brings state-law claims for conversion and unjust enrichment.

Charter moves to dismiss all of Throneburg's claims, arguing that all claims are time-barred, that Cable Act claims relating to disclosure fail to state a claim,

that the state-law claims fail to state a claim, and that Throneburg fails to allege an injury-in-fact.

Because Throneburg was a Charter customer more than six years ago, some of his claims (Counts I-III) are time-barred.  However, Throneburg also alleges recent disclosure violations (in Counts IV-V) that are not time-barred, and these allegations do state a claim that is plausible on its face.  Finally, Throneburg's state-law claims (Counts VI-VII) fail to state a claim upon which relief can be granted.  As a result, I will grant in part and deny in part Charter's motion to dismiss.

## **Legal Standard**

The purpose of a 12(b)(6) motion to dismiss is to test the legal sufficiency of the complaint.  When ruling on a motion to dismiss, I must accept as true all factual allegations in the complaint and view them in the light most favorable to the plaintiff.  Fed. R. Civ. P. 12(b)(6); see Erickson v. Pardus, 551 U.S. 89, 94 (2007); Swierkiewicz v. Sorema N.A., 534 U.S. 506, 508 n.1 (2002).  This is so "even if it strikes a savvy judge that actual proof of those facts is improbable." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 556 (2007); see Neitzke v. Williams, 490 U.S. 319, 327 (1989) ("Rule 12(b)(6) does not countenance . . . dismissals based on a judge's disbelief of a complaint's factual allegations.").  An action fails to state a claim upon which relief can be granted if it does not plead

"enough facts to state a claim that is plausible on its face." <u>Twombly</u>, 550 U.S. at 570. To survive a motion to dismiss, "[f]actual allegations must be enough to raise a right to relief above the speculative level." <u>Id.</u> at 555.

## **Discussion**

Throneburg asserts that Charter committed five violations of the Cable Act. First, Charter allegedly failed to deliver privacy notifications, in violation of § 551(a)(1), both when Throneburg entered into a service agreement with Charter (Count I) and at least once a year thereafter during his subscription (Count II). He further alleges that even if Charter had provided him with its privacy notifications while a subscriber, they were not clearly and conspicuously worded and as a result violated § 551(a)(1)(A)-(E) (Count III). He also alleges that Charter failed to obtain his prior written or electronic consent before disclosing his PII, in violation of § 551(c)(1) (Count IV). Finally, he alleges that Charter failed to provide its subscribers an opportunity to prohibit or limit such disclosures, in violation of § 551(c)(2)(C) (Count V). Throneburg also asserts claims for conversion (Count VI) and unjust enrichment (Count VII) under Missouri law arising from Charter's alleged sale of his PII.

**Cable Act Claims**

*Standing*

Charter argues that Throneburg fails to allege an injury in fact sufficient to establish Article III standing. Article III of the Constitution limits the jurisdiction of the federal courts to cases or controversies. A plaintiff has the burden of establishing standing by demonstrating (1) an injury in fact, (2) fairly traceable to the defendant's challenged conduct, and (3) that is likely to be redressed by a judicial decision in the plaintiff's favor. Spokeo, Inc. v. Robins, 136 S. Ct. 1540, 1547 (2016) (citing Lujan v. Defenders of Wildlife, 504 U.S. 555, 559-60 (1992)). "Article III requires a concrete injury even in the context of a statutory violation." Id. at 1549. A concrete injury must "actually exist," and it must be "real" and not "abstract." Id. at 1548.

Throneburg's allegations are sufficient to demonstrate standing in this case. In Braitberg v. Charter Commc'ns, Inc., the Eighth Circuit Court of Appeals held that a plaintiff bringing claims under the Cable Act failed to allege an injury in fact because he claimed "only that Charter violated a duty to destroy [PII] by retaining certain information longer than the company should have kept it." 836 F.3d 925, 930 (8th Cir. 2016). However, Braitberg specifically noted that "[plaintiff] does not allege that Charter has disclosed the information to a third party, that any outside party has accessed the data, or that Charter has used the information in any

way during the disputed period," implying that these allegations would be sufficient to confer standing.  Id.  Since this is exactly what Throneburg has alleged, he satisfies Article III's injury-in-fact requirement.

Gubala v. Time Warner Cable, Inc., also cited by Charter, is likewise distinguishable from Throneburg's case.  846 F.3d 909 (7th Cir. 2017).  In Gubala, the plaintiff alleged that Time Warner had failed to destroy his PII after he was no longer a customer.  The Seventh Circuit Court of Appeals noted, "[Plaintiff's] only allegation is that the retention of the information, on its own, has somehow violated a privacy right or entailed a financial loss.  There is unquestionably a risk of harm in such a case.  But the plaintiff has not alleged that Time Warner has ever given away or leaked or lost any of his [PII] or intends to give it away . . . ."  Id. at 910 (emphasis original).  As Throneburg alleges that Charter has disclosed and sold his PII to third parties without his consent, he has standing to bring this lawsuit.

*Statute of Limitations*

Charter argues that all of Throneburg's Cable Act claims are barred by the statute of limitations.  However, the Cable Act does not provide a statute of limitations for private causes of action under § 551.  Michael v. Charter Comc'ns, Inc., No. 4:17-cv-1242-JMB, 2019 WL 1379967, at *2 (E.D. Mo. Mar. 27, 2019) (listing cases); see also 47 U.S.C. § 551.  When this is the case in remedial

legislation, "Congress ordinarily intends by its silence that we borrow state law." Michael, 2019 WL 1379967, at *2 (quoting Lampf, Pleva, Lipkind, Prupis, & Petigrow v. Gilberston, 501 U.S. 350, 355 (1991)).  However, courts borrow from federal law "when a rule from elsewhere in federal law clearly provides a closer analogy than available state statutes," Michael, 2019 WL 1379967, at *3 (internal quotation marks and citation omitted), especially "when the operation of a state limitations period would frustrate the policies embraced by the federal enactment." Lampf, 501 U.S. at 355–56; see also Agency Holding Corp. v. Malley-Duff & Assoc., Inc., 483 U.S. 143, 149–50 (1987) (applying federal law on limitations period where federal policies favored application of a federal rule).

Among other things, Congress intended the Cable Act to "establish a national policy concerning cable communications" and to "minimize unnecessary regulation that would impose an undue economic burden on cable systems."  47 U.S.C. § 521; see also Scofield v. Telecable of Overland Park, Inc., 751 F. Supp. 1499, 1510 (D. Kan. 1990), rev'd on other grounds, 973 F.2d 874 (10th Cir. 1992). And, § 551 was specifically meant to "create a nationwide standard for the privacy protection of cable subscribers. . . ."  H.R. Rep. No. 98-934, at 76 (1984).  As a result, "the federal interest in a nationwide standard for the privacy protection of cable subscribers is best served by the application of a single statute of limitations."  Michael, 2019 WL 1379967, at *4.

The parties disagree about which federal statute's limitation period I should borrow for Throneburg's Cable Act claims. Relying on a recent decision from this Court, Michael, 2019 WL 1379967, at *3, Charter argues that I should borrow the one-year limitations period from the Truth in Lending Act ("TILA") to find Throneburg's claims time-barred. For his part, Throneburg urges me to adopt the two-year statute of limitations from the Video Privacy Protection Act of 1988 ("VPPA").

TILA provides that "any action under this section may be brought in any United States district court . . . within one year from the date of the occurrence of the violation." 15 U.S.C. § 1640(e). As Charter points out, I ordered Throneburg to "meaningfully distinguish this case" from Michael, which adopts TILA's statute of limitations. (Doc. #22 at 1 n.1). Yet Charter acknowledges that this question "has not been widely litigated." See Michael, 2019 WL 1379967, at *3. And, Throneburg's argument—that I should adopt VPPA's statute-of-limitations period instead—does not seem to have been considered by any court to date (including Michael). VPPA provides that "[n]o action may be brought under this subsection unless such action is begun within 2 years from the date of the act complained of or the date of discovery." 18 U.S.C. § 2710(c)(3).

As recognized in Michael, TILA and the Cable Act share "the same general purpose of requiring meaningful disclosure of information to consumers," "provide

that such disclosure should be clear and conspicuous," and have "somewhat similar" civil enforcement provisions. 2019 WL 1379967, at \*4 (quoting <u>Scofield</u>, 751 F. Supp. at 1510). Moreover, the Cable Act and TILA both require disclosure of information <u>to</u> consumers. <u>See</u> 15 U.S.C. § 1601(a) ("It is the purpose of this subchapter to assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him. . ."). However, the Cable Act also contains provisions (namely, § 551(c)-(e)) protecting the privacy of information <u>about</u> consumers. TILA never mentions "personally identifiable information."

VPPA and the Cable Act also share some striking similarities, and other courts have recognized parallels between the two statutes. <u>See</u> <u>Parker v. Time Warner Entm't Co.</u>, No. 98-CV-4265, 1999 WL 1132463, at \*9 (E.D.N.Y. Nov. 8, 1999) (noting analogy between Cable Act and VPPA and supporting interpretation of Cable Act through use of VPPA); <u>In re Hulu Privacy Litig.</u>, No. C11-03764-LB, 2014 WL 1724344, at \*10 (N.D. Cal. Apr. 28, 2014) ("Courts hold that the VPPA is analogous to the Cable Act."). First, both statutes generally prohibit disclosure of PII. Both statutes then allow disclosure of PII in certain cases such as: disclosure pursuant to a court order;[1] disclosure of names and addresses if there has

---

[1] Compare § 551(c)(2)(B) ("A cable operator may disclose such [PII] if the disclosure is made pursuant to a court order authorizing such disclosure, if the subscriber is notified. . . .") with § 2710(b)(2)(F)(i) ("A video tape service provider

been an opportunity to prohibit such disclosure;[2] and disclosure in the ordinary course of business.[3]  Both statutes contain provisions regarding the destruction of PII if "the information is no longer necessary for the purpose for which it was collected and there are no pending requests or orders for access to such information . . . ."  See § 551(e), § 2710(e).  Both statutes contain preemption provisions.[4]

---

may disclose [PII] concerning any consumer pursuant to a court order if the consumer is given reasonable notice. . . .").

[2] Compare § 551(c)(2)(C)(i)–(ii) ("A cable operator may disclose such [PII] if the disclosure is a disclosure of the names and addresses of subscribers to any cable service or other service, if the cable operator has provided the subscriber the opportunity to prohibit or limit such disclosure, and the disclosure does not reveal directly or indirectly, the extent of any viewing or other use by the subscriber of a cable service….") with § 2710(b)(2)(D)(i)–(ii) ("A video tape service provider may disclose [PII] concerning any consumer to any person if the disclosure is solely of the names and addresses of consumers and if the video tape service provider has provided the consumer with the opportunity, in a clear and conspicuous manner, to prohibit such disclosure; and the disclosure does not identify the title, description, or subject matter of any video tapes or other audio visual material.").

[3] Compare § 551(c)(2)(A) ("A cable operator may disclose such [PII] if the disclosure is necessary to render, or conduct a legitimate business activity related to, a cable service or other service provided by the cable operator to the subscriber.") with § 2710(b)(2)(E) ("A video tape service provider may disclose [PII] concerning any consumer to any person if the disclosure is incident to the ordinary course of business of the video tape service provider.").

[4] Compare § 551(g) ("Nothing in this subchapter shall be construed to prohibit any State or any franchising authority from enacting or enforcing laws consistent with this section for the protection of subscriber privacy.") with § 2710(f) ("The provisions of this section preempt only the provisions of State or local law that require disclosure prohibited by this section.").

Finally, the Cable Act and VPPA have almost identical civil enforcement provisions, allowing "any person aggrieved . . . in violation of this section [to] bring a civil action in a United States District court," see § 551(f)(1) and § 2710(c)(1), and stating that the "court may award actual damages but not less than liquidated damages [of a specified amount]; punitive damages; [and] reasonable attorneys' fees and other litigation costs reasonably incurred." See § 551(f)(2) and § 2710(c)(2). However, VPPA does not contain provisions dealing with disclosing information to consumers, whereas the Cable Act does.

Neither TILA nor VPPA is a perfect analogue to the Cable Act. Even if I apply VPPA's two-year statute of limitations, however, most of Throneburg's Cable Act claims are still time-barred. VPPA measures the start of the limitations period from the date of the violation or the date of its discovery. 18 U.S.C. § 2710(c)(3). However, when the word "discovery" is used in a statute of limitations, "state and federal courts have typically interpreted the word to refer not only to actual discovery, but also to the hypothetical discovery of facts a reasonably diligent plaintiff would know." Merck & Co. v. Reynolds, 559 U.S. 633, 645 (2010). That is, determining the "date of discovery" is an objective inquiry; it does not solely depend upon the plaintiff's subjective knowledge. See Buder v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 644 F.2d 690, 692 (8th Cir.

1981); see also Daniel v. Cantrell, 375 F.3d 377, 385 (6th Cir. 2004) (using objective standard in context of VPPA).

Counts I and II of the complaint allege that Charter failed to deliver initial and subsequent privacy notifications while Throneburg was a subscriber. Count III alleges that, even if these privacy notifications were sent to him while he was a subscriber, they were not clearly and conspicuously worded as required by the Cable Act. Throneburg ceased being a subscriber in 2012. These claims accrued while plaintiff's subscription was in force, see Michael, 2019 WL 1379967, at *5, and VPPA's "discovery" provision does nothing to alter the fact that these claims are time-barred as they were filed well outside the statute's two-year limitations period. A reasonably diligent plaintiff would have necessarily discovered the facts giving rise to these claims while he was a subscriber. That Throneburg may have only become aware of Charter's legal obligation to provide statutory notice or the alleged nature and frequency of Charter's alleged violations is not significant. See id.; see also McDonough v. Anoka Cty., 799 F.3d 931, 943 (8th Cir. 2015) (holding that claims under the Drivers Privacy Protection Act accrue when personal information is improperly accessed, even though drivers did not know of alleged access); Foudy v. Miami-Dade Cty., Fla., 823 F.3d 590, 593–94 (11th Cir. 2016) ("[I]n the absence of a clear Congressional directive or a self-concealing violation, the court should not graft a discovery rule onto a statute of limitations.")

Counts I-III are plainly time-barred as they were filed well outside VPPA's two-year statute of limitations and must be dismissed.

Counts IV-V relate to Charter's alleged disclosure of Throneburg's PII to third parties, both as a subscriber and after he terminated his subscriber relationship in 2012. In an attempt to avoid dismissal of these claims as time-barred, Throneburg alleges in conclusory fashion that Charter "failed to disclose and deliberately concealed" the disclosures. (Doc. #4, at ¶ 17). Yet he alleges no facts indicating that a reasonable plaintiff could not have discovered the facts underlying these alleged violations sooner, so even VPPA's statute of limitations does not allow Throneburg to bring disclosure claims reaching all the way back to 2003 under these circumstances. See, e.g., Wood v. Carpenter, 101 U.S. 135, 140–41 (1879) ("A general allegation of ignorance at one time and of knowledge at another are of no effect. If the plaintiff made any particular discovery, it should be stated when it was made, what it was, how it was made, and why it was not made sooner." (emphasis added)); Summerhill v. Terminix, Inc., 637 F.3d 877, 880 (8th Cir. 2011) ("Therefore, it is Summerhill's burden to plead, with particularity, facts to support his claim that the doctrine of fraudulent concealment tolls applicable statutes of limitations."). This, however, does not mandate dismissal of Counts IV and V in their entirety, as Throneburg also alleges that Charter "currently maintains his information as a non-subscriber" and that "after termination of

Plaintiff's services," Charter still disclosed his PII "hundreds of times per month." (Doc. #4 at ¶¶ 7, 14, 24); (Doc. #23 at 2) ("Up through the time of filing Plaintiff's suit, Defendant Charter retained and illegally disclosed Mr. Throneburg's [PII]."). Taking these allegations as true as I must at this stage of the proceedings, Throneburg's complaint alleges ongoing violations in Counts IV–V that are not barred by VPPA's statute of limitations. Throneburg can therefore pursue these disclosure violations for up to a two-year period before the lawsuit was filed.[5] The motion to dismiss Counts IV and V is granted in part and denied in part as set forth above.

*Disclosure Violations—Failure to State a Claim*

Charter argues that even if the disclosure-violation claims (Counts IV-V) are timely, Throneburg fails to "plausibly allege any facts regarding when Charter allegedly permitted unauthorized access to his PII and/or disclosed his PII to impermissible third parties." (Doc. #9 at 7). Accepting as true all of Throneburg's factual allegations in his complaint, I find that he has pleaded enough facts to state a claim with regard to the disclosure violations. Reading the complaint as a whole, Throneburg alleges facts regarding the who, what, when, and how of Charter's disclosures of his PII. He alleges that Charter disclosed his PII to co-defendant

---

[5] Because Throneburg alleges ongoing violations, he would be allowed to bring his disclosure claims even if I adopted TILA's statute of limitations (though he would be limited to one year instead of two).

Valassis and to third-party companies like Massage Envy, Club Fitness, State Farm, and Geico (or that Charter permitted these companies to access his PII). (Doc. #4 at ¶¶ 26–27). He alleges that the disclosed PII consists of (among other things) name, address, race, language spoken, income level, and other subscriber information, like subscription packages or channels. (Doc. #4 at ¶¶ 17, 25). He alleges that Charter has been doing this hundreds of times per month since 2010 and that Charter still retains and discloses his PII today. (Doc. #4 at ¶¶ 7, 14, 24). And, he alleges that Charter makes these disclosures through a database that retains the PII of current and past subscribers and that allows third parties to market products to the people within this database. (Doc. #4 at ¶¶ 9-11). This is enough to state a claim that is plausible on its face, so Charter's motion to dismiss on this basis will be denied.

**State-Law Claims**

In Missouri, "conversion is the unauthorized assumption of the right of ownership over the personal property of another to the exclusion of the owner's rights." Ward v. W. Cty. Motor Co., 403 S.W.3d 82, 86 n.2 (Mo. 2013) (quoting Hunt v. Estate of Hunt, 348 S.W.3d 103, 113 (Mo. Ct. App. 2011)).[6] Even if I assume, for purposes of this motion only, that Throneburg's PII is a form of

---

[6] Conversion is a separate claim from invasion of privacy (that is, someone cannot "convert" a right to privacy and publicity). Thus, Throneburg's arguments regarding invasion of privacy and misappropriation of name are irrelevant here.

"personal property," he still fails to allege how Charter's use operates "to the exclusion of" his own rights, an essential element of his claim.  Therefore, Throneburg's conversion claim is dismissed.

In Missouri, "a claim for unjust enrichment has three elements: a benefit conferred by a plaintiff on a defendant; the defendant's appreciation of the fact of the benefit; and the acceptance and retention of the benefit by the defendant in circumstances that would render that retention inequitable." Grisham v. Mission Bank, 531 S.W.3d 522, 538 (Mo. Ct. App. 2017) (quoting Hertz Corp. v. RAKS Hosp., Inc., 196 S.W.3d 536, 543 (Mo. Ct. App. 2006).  At this time, the Court cannot conclude that Throneburg has failed to state an unjust enrichment claim against Charter.  Whether Throneburg will ultimately prevail on his claim is not before me at this stage of the proceedings.  Moreover, given Throneburg's allegations regarding the ongoing nature of Charter's disclosure of his PII, Charter's argument that these claims are barred by Missouri's applicable five-year statute of limitations must be denied at this time.

Finally, Throneburg has also filed an unjust enrichment claim against a second defendant, Valassis Communications, Inc., alleging that Valassis obtained his PII from Charter with the intention of disclosing it to third parties for profit. Valassis is not a Missouri corporation and has filed a motion to dismiss the claim against it for lack of personal jurisdiction.  In support of this motion, Valassis has

submitted the declaration of Christopher Kersh, its Senior Sales Executive, attesting to Valassis' lack of contacts with Missouri. Because Throneburg stated that he needed jurisdictional discovery before he could respond to Valassis' motion, I ordered him to submit proposed limited discovery requests for the Court's consideration. After careful consideration, I will grant Throneburg the following jurisdictional discovery: Throneburg may serve written discovery requests limited to Valassis' alleged acquisition and sale of Throneburg's PII only, and he may depose Mr. Kersh as to the matters attested to in his declaration only. However, any such deposition must be conducted in Dallas, Texas, where Mr. Kersh is located and must be limited in time to four hours. In addition to any documents responsive to written discovery requests as authorized above, however, Valassis will also be required to produce any documents relied upon by Mr. Kersh in connection with the creation of his declaration.

Accordingly,

**IT IS HEREBY ORDERED** Defendant Charter's motion to dismiss [8] is **GRANTED** in part and **DENIED** in part as follows: Counts I, II, III, and VI are dismissed; Counts IV and V are dismissed only to the extent that they allege violations more than two years before the complaint was filed, but to the extent Counts IV and V allege ongoing and past violations within two years of the

complaint being filed, the motion to dismiss is denied.  In all other respects, the motion to dismiss is denied.

**IT IS FURTHER ORDERED** that plaintiff Throneburg may serve written discovery requests to defendant Valassis in connection with the motion to dismiss for lack of personal jurisdiction [Doc. # 17] only as set forth above, and plaintiff may depose Mr. Christopher Kersh as to the matters attested to in Mr. Kersh's declaration [Doc. # 17-2].  Any deposition of Mr. Kersh must take place in Dallas, Texas, where Mr. Kersh is located, unless defendant Valassis and Mr. Kersh agree otherwise, and must be limited in time to four hours.  Defendant Valassis will also be required to produce any documents relied upon by Mr. Kersh in connection with the creation of his declaration.

**IT IS FURTHER ORDERED** that all jurisdictional discovery conducted by plaintiff as to defendant Valassis will be completed no later than **January 10, 2020,** and plaintiff shall file a response in opposition to the motion to dismiss no later than **January 24, 2020**, and defendant Valassis may file a reply brief in support of its motion to dismiss by **January 31, 2020**.


_____
RODNEY W. SIPPEL
UNITED STATES DISTRICT JUDGE

Dated this 10th day of October, 2019.